**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-00464-WJM-MJW

JEFFREY HEIT and
LANCE TITUS,

    Plaintiff,

v.

EDF TRADING NORTH AMERICA, LLC,

    Defendant.

---

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF. No.19.) Plaintiffs Jeffrey Heit ("Heit") and Lance Titus ("Titus") (jointly the "Plaintiffs") have filed a Response to this Motion (ECF No. 20), and Defendant EDF Trading North America LLC ("EDF" or "Defendant") has filed a Reply. (ECF No. 22). The Motion is ripe for adjudication. Having reviewed the briefs and the relevant portions of the record, the Motion for Summary Judgment is denied.

### I. BACKGROUND[1]

**A. Factual Background**

On January 25, 2010, Heit signed a contract with Defendant to work at its Denver office. A contract was signed by Titus shortly thereafter, which was substantially similar to Heit's contract (jointly the "Contracts"). (ECF. No.19, Exh. A1

---

[1] On the instant Motion, the Court must view the facts in the light most favorable to Plaintiff. *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir.2010). Thus, to the extent any relevant facts are disputed, the Court adopts Plaintiffs' version of recited facts in this Order.

and Exh. A2.))  The Contracts provide that Plaintiffs' principal place of employment would be "EDFT's offices, located in Denver Colorado." (ECF. No.19, Exh. A1.)    The office designated for both Plaintiffs was located at 9785 South Maroon Circle, Suite 210 in Englewood, Colorado (the "Denver Office").  (ECF No. 20 at 1 and 8.)

In April 2010, Defendant made a business decision to sell its coal business that operated out of the Denver office, but kept the office space open for several more months.  (*Id.* at 8.)  During April 2010 through September 2010, Defendant began closing the Denver Office.  (*Id.* at 13.)  Plaintiffs, however, remained in that office while Defendant began to work with real estate brokers.  (ECF No. 19 Exh. A13, at 2-3; *see also*, Exhs. A21, A22, A24 and  Exh. A-25.)  No alternative real estate space or sublease was ever finalized in Denver while Plaintiffs were employed by Defendant. (ECF No. 20, Exh 8 at ¶ 15-17. )

While Heit worked in the office through approximately August 31, 2010, the cable was shut off in July, and the phone, data and internet accessibility was only intermittent throughout August.  (ECF No. 19. Exh. A47 and ECF No. 20 Exh. 1 at 77:9-16, 276:20-21.) Plaintiffs' contend that at no time was Heit working from a home office, and Titus was only willing to work from home "temporarily". (*Id.* Exh.  1 at 77:9-16, 276:20-21.)

After August 31, 2010, when the Denver Office no longer had phone, cable or internet service, Heit primarily worked out of his car and various cafes. (ECF No. 20 Ex. 1 at 119:19 – 121:16.)[2] On September 22, 2010, the office was closed and both Plaintiffs then worked from home. (ECF No. 19 Exh. 47.)

---

[2] Plaintiffs' phone numbers and mail were also transferred to Houston around this time. (ECF No. 19 Exhs. A47, A4 and A-5.)

2

On September 24, 2010, Plaintiffs signed and returned letters they had received from a third-party (Enserco) detailing the terms of future employment, and which anticipated acceptance of employment on or about December 27, 2010. (ECF 20 Exh. 4 at 26:12-23 and Exh. 3 at 57:1-25.) Three days later, on September 27, 2010, Plaintiffs sent notices to Defendant titled: "Notice of Resignation due to Constructive Termination". (ECF No. 19 Exh. A3 and A4). Since Plaintiffs' Contracts provided Defendant with a 30-day right to cure, the notices for constructive termination identified that Plaintiffs' last work day would be October 28, 2010. (ECF No. 20 Ex. 1 at 224:5-8).[3] With respect to constructive termination, clause 2(e) provides:

> [I]f your [Plaintiff's] principal place of employment is moved further than 50 miles from the Company's offices in Denver, Colorado. . . . Prior to a resignation by Constructive Termination, Plaintiffs must first: communicate by delivery to the Company of thirty days' advance written notice of such resignation and the grounds therefore, during which period the Company shall be entitled to cure or remedy the matters set forth in such notice to your reasonable satisfaction, in which a Constructive Termination shall be deemed not to have occurred. . . .Any other resignation by you shall be communicated by thirty days' advance written notice.

*See, (*ECF No. 19 Exhs. 1 at 2).

The parties agree that the cure provision "related to a Constructive Termination is a material provision" of the Contracts. (ECF No. 19 Exh. B at 99:8-24; Exh. C 194:1-195:8.) Much will turn on the constructive termination and cure clauses below.[4]

---

[3] The Titus notice also claimed EDF materially breached his employment agreement because "[h]igh ranking EDF employees . . . applied constant and increasing pressure to relocate to Houston." (ECF No. 19 Exh. A4.)

[4] Before addressing those issues, amongst others, it is worth noting that the factual background above is drawn from 67 asserted facts by Defendant. (*See generally*, ECF No. 19) The Court notes that of the 67 asserted facts in Defendant's Statement of Facts, 51 of those asserted facts were either denied or disputed, in part, by Plaintiff. *See, generally,* (ECF No. 19; ECF No. 20.) While not dispositive of this Motion without more, it is difficult to view how this Motion—at least on first blush—could be adjudged under a summary judgment framework. The

## II.  LEGAL STANDARDS

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  There, the Court held that defendant could meet its initial burden for summary judgment "by 'showing' that there [was] an absence of evidence to support the nonmoving party's case." *Id.* at 325. When "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of

---

"overuse of motions filed pursuant to Fed. R. Civ. P. 56 in this District unreasonably delays the progress of civil litigation." *See*, *Practice Standards for Criminal and Civil Matters before William J. Martínez, U.S. District Court for the District of Colorado* at  III. E. 1.

the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quotation marks omitted).

### III.  ANALYSIS

Plaintiffs do not dispute that the substantive law of Texas is applied in construing the Contracts at issue. Under Texas law, the essential elements of a breach of contract, are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica*, Inc., 564 F.3d 386, 418 (5th Cir. 2009); *Aguiar v. Segal*, 167 S.W.3d 443, 450 (2005); *First City Nat'l Bank of Midland v. Concord Oil Co.*, 808 S.W.2d 133, 137 (1991)

Within the framework of summary judgment, Defendant asserts that because Plaintiffs can neither establish that they performed as required under the Contracts, nor that EDF breached the Agreements, Plaintiffs' contract claim fails as a matter of law. *Celotex*, 477 U.S. at 322 (mandating summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.")[5]  For the reasons that follow, Defendant's arguments are rejected.

---

[5]When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman*, 252 F.3d at 1115.

5

### A.   The Meaning of "Principal Place of Employment": Physical offices or Plaintiffs' Personal Homes?

Plaintiffs' claim for breach of contract is based on constructive termination. Section 2(e)[6] of the Contracts states that moving the employees' "principal place of employment" "further than 50 miles from the Company's offices in Denver, Colorado" would be deemed "constructive termination." (ECF 19, Exh. A1 at 5).

Plaintiffs contend that because Defendant closed the Denver Office—and did not offer any other commercial offices in Denver other than Plaintiffs' own homes—Defendant breached the contract based on constructive termination. Critically, Plaintiffs' construe the phrase "principal place of employment" to mean: "an actual, physical EDF office." (ECF No. 20 at 28).

Defendant counters that there was no breach of contract and that the closing of the Denver Office did not trigger constructive termination because the "principal place of employment" for both Plaintiffs became their respective homes. (ECF No. 19 at 15-17.)[7] According to Defendant, Plaintiffs could not have been constructively terminated because each of their homes are within 50 miles of Denver. (*Id.*) Defendant construes the phrase, "principal place of employment" to mean: "any places EDF set up for its employees to perform services and conduct the business of EDF." (*Id.*) Defendant thus asserts that the scope of the disputed phrase includes Plaintiffs' personal homes. (*Id.*)

---

[6] Note: there is a typographical error in the Heit contract insofar as the paragraph numbering jumps from 2(c) to 2(e); whereas in the Titus contract, the numbering does not jump and the constructive termination clause is housed in 2(d). For the purposes of this Order, the Court will label this clause 2(e), consistent with Plaintiffs' briefing. (*See generally,* ECF No. 20.)

[7] Defendant further argues that even if constructive termination was triggered, Plaintiffs did not provide Defendant with 30 days to cure the constructive termination, which is also pursuant to clause 2(e).This argument is addressed below in Section B.

6

*1.*     Relevant Canons of Construction under Texas Law

To construe a written contract, Texas law provides that "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). "To achieve this objective, courts should examine the *entire writing* in an effort to *harmonize* and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (emphasis added.)  "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Id.*  It is the Court's duty "to consider each part with every other part so that the effect and meaning [of the contractual clause] may be determined." *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex.1980).

Here, and by addressing the parties' true intentions and the entire agreement, the Court concludes the Plaintiffs' construction is correct – that is: an "actual, physical" EDF office; not personal homes owned by the Plaintiffs.  (ECF No. 20 at 28.). The reason is two-fold.

First, nothing in the Contracts expressly state that Plaintiffs personal homes would be viewed as their principal place of employment; rather, clause 1 provides that the Plaintiffs' "principal place of employment shall be at *EDFT's offices,* located in Denver, Colorado."[8] (*emphasis added.*) (ECF No. 10 Exh. A1 a 1.)  Given this express reference to the Defendant's company offices—and the absence of Plaintiffs' personal homes in clause 1—the Court holds that the very language of clause 1 is illustrative of

---

[8] The acronyms EDF and EDFT are considered synonymous for the purposes of construing the Contracts. Here, the use of an acronym for the purposes of contract construction is  to denote the Company's office – not the personal homes of the Plaintiffs.

7

the parties' intent; an intent that is clear, and an intent which comports with the Plaintiffs' construction of the disputed phrase. *Valence Operating Co.* 164 S.W.3d 656, 663.

Second, the Court is not persuaded by Defendant's construction, which is primarily driven by dictionary definitions. In short, that construction would have the Court view the phrase "principal place of employment" as the Plaintiffs' personal homes. This stretches the phrase too far. It does not accord with the intent of the Contracts, nor harmonize the clauses therein. Moreover, and after examining the Contracts in their entirety, the Court finds that Defendant places too much reliance on dictionary definitions to support its preferred construction of the disputed phrase.

Specifically, Defendant relies on the legal maxim that allows this Court to rely on dictionaries to construe the plain meaning of the Contracts. Defendant points to several cases to support its position. Amongst others, these include: *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex.2011) Based on the plain meaning, Defendant asserts that Black's Law Dictionary defines this phrase as "(1) [t]he location at which work done in connection with a business is carried out; and (2) the place where some process or operation related to the business is conducted." BLACK'S LAW DICTIONARY 1266 (9th ed. 2009). Based on either meaning, Defendant argues that "principal place of employment" can mean: "any places EDF set up for its employees to perform services and conduct the business of EDF." (ECF No. 19 at 16) But a dictionary meaning is merely a tool for interpretation. It only takes the Defendant's argument so far. It's a starting point.[9] Nothing in Texas law states that dictionary meanings should trump the

---

[9] Defendant's reliance on the dictionary meaning of the disputed phrase only makes the phrase more abstract, and the external tools relied upon to help Defendant's position are just that: external. To an extent, they perhaps provide a starting point for Defendant's argument; but

8

true "intentions of the parties." *Valence Operating Co.* 164 S.W.3d 656, 662.

Nowhere in Defendant's brief does it seek to rebut this primary concern, nor does it seek to challenge the related canons of construction going to the intent of the instrument.  Rather, Defendant relies on dictionary meanings to sway the Court's opinion. Such reliance is unpersuasive.  This view is only reinforced when the Court inspects the *Epps* decision in more detail.  Upon inspection, the Court reads that the only reason that the dictionary was "resorted to", there, was because *"no other portion of the agreement shed light on the term"* being construed. *Epps* 351 S.W.3d 866 (Tex.2011)[10] (emphasis added.)

By contrast, that is not the case here: the Heit and Titus agreements *do shed light* on the intended meaning of the disputed phrase. When both Contracts are viewed in their entirety, there's indeed a close connection between the clauses 1, clause 2(c) and clause 2(e) – which allows the Court to better construe the disputed phrase in light of the entire agreement.

In light of these clauses—and viewing a contract as a whole—the intent of the Contracts becomes clear: to provide Plaintiffs with a sense of security that their positions would not be transferred to Defendant's headquarters in Houston.  When viewed in this context, the disputed phrase—"principal place of employment"—has

---

they do not inform the true intent of the contract when the Contracts are viewed in their entirety, which is task before the Court under Texas law. *Valence Operating Co.* 164 S.W.3d 656, 663; *see also*, *United States v. Monia*, 317 U.S. 424, 431 (1943) (Frankfurter, J., dissenting) (stating, albeit in the context of statutory construction: "the notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification.")

[10] See, also *Flagship Credit Corp. Co.*, No. 11-20408. June 15, 2012 (2012) (Slip Copy) (stating that "...context is often determinative.")

nothing to do with the Plaintiffs' personal homes; and everything to do with providing the parties with some level of certainty as to office locations during the term of the Contracts. This construction harmonizes the intent of these clauses and confirms their intended meaning as applied to the parties. *Valence Operating Co.* 164 S.W.3d 656, 662.[11]

Accordingly, the Court concludes that "principal place of employment" means an "actual, physical EDF office" – and does not encompass the Plaintiffs' personal homes. To the extent that Defendant's Motion for Summary Judgement is based on its contention that Plaintiffs were not constructively terminated, the Motion is denied.

## B.     The Right to Cure Under the Contracts

Defendant next argues that Plaintiffs failed to provide Defendant with an opportunity to cure the alleged breach pursuant to clause 2(e)(ii) of the Contracts. (ECF No. 19 at 18) That clause provides:

> Any resignation by you as a result of assertion of a Constructive Termination shall (i) occur within two (2) years (or less) of the event giving rise to such Constructive Termination and (ii) be communicated by delivery to the Company of thirty days advance written notice of such resignation and the grounds therefore, during which period the Company shall be entitled to **cure or remedy** the matters set forth in such notice to your **reasonable satisfaction**, in which event a Constructive Termination shall be deemed not to have occurred."

*(Id.* Exh. A1 at 2.) (emphasis added.)

---

[11] If Defendant's preferred construction was taken to its logical conclusion, the Court finds that it will lead to an absurd result. For instance, if the Court were to adopt Defendant's construction, it places Plaintiffs in the position where Plaintiffs could move 50 miles outside Denver, unilaterally. Plaintiffs could then allege constructive termination in absence of any cure by Defendant. This scenario lacks commonsense; much like the Defendant's construction which seeks to distort the true intent of the Contracts. *See generally*, *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.*, 794 S.W.2d 380, 383 (1990).

Defendant argues that it was unable to cure the Plaintiffs' grounds for constructive termination because Plaintiffs purportedly entered into contracts with a third-party competitor three days before the period to cure ended. (ECF No. 19 at 22.) In short, Defendant contends that Plaintiffs "never fulfilled their obligation to provide EDF with its right to 30 days, and thus Plaintiffs cannot establish breach. "(*Id.*) The Court rejects this argument as well.

First, the Court finds that there is genuine dispute as to material fact in the record with respect to whether Plaintiffs' accepted contracts with Enersco (the purported third-party). There is lengthy deposition testimony that was filed with this Motion that puts the issues of offer and acceptance into some doubt in the months of September through December 2010. And there is certainly material facts in dispute based on such testimony that has been filed for summary judgment.

For example, Plaintiffs contend material facts are in dispute as to whether Plaintiffs signature on purported contract ("offer letter") prevented Defendant from curing the grounds for constructive termination. Specifically, (1) the letters were not contracts. Instead, they were 'offer letters,' and (2) the offer letters anticipated a start date of December 27, 2010 before any employment was to commence. (ECF No. 20 Exh. 7 ¶ 16, Exh. 8 ¶ 12, Exh. 2 at 237:13-16, and Exh. 1 at 224:3-8, amongst others*)* Viewed in the light most favorable to Plaintiffs, the Court is not positioned to find for Defendant as a matter of law because there are material facts in genuine dispute. *Adler* 144 F.3d 664, 670 (10th Cir. 1998).

Second, even if the Court were to accept that Plaintiffs entered into

11

contracts with third parties,[12] the issue of whether there has been cure is one of material fact. This is supported by the parties Statement of Facts, where the parties agree that the cure provision "related to a Constructive Termination is a material provision" of the Contracts. (ECF No. 19 Exh. B at 99:8-24; Exh. C 194:1-195:8.) The notion that cure is also a material one is supported by the language of the clause 2(e) itself. That is, the "cure", within the 30 day period, must be to the Plaintiffs' "reasonable satisfaction." Defendant ignores this phrase. Clearly, determining whether the Plaintiffs have been reasonably satisfied by Defendant's cure is not one for summary judgment; rather, it is one that requires assessment of critical and material facts that will ultimately be decided at trial.[13]

Third, it is sometimes forgotten that it is the moving party who bears the "initial burden" for the purposes of summary judgment. As to the issue of cure, that burden is not satisfied here; ever more so when the moving party (Defendant) cannot identify a "lack of evidence" by Plaintiffs on the "essential element" of breach. As noted above, there is an abundance of evidence on whether there has been breach because

---

[12] The Defendant fails to make any effort to construe the word: "cure". Nor does it seek to construe the phrase: "to your reasonable satisfaction." Had Defendant done so, there would have been some scope to at least consider Defendant's argument for the purposes of summary judgment as matter of law. It failed to do so, which cuts against Defendant's position – and the lack of authorities cited by Defendant only fortifies this position. See, generally, *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir.1992) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.") *See, also*: *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990)).

[13] See, also, the array of factors in *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004) for determining materiality – including: "(a) the extent to which the injured party will be deprived of a reasonably expected benefit. . . (e) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing").

Defendant failed to cure the constructive termination.[14] As the authorities provide, there is no reason to grant summary judgment where the moving party (Defendant) has not discharged its initial burden. *Cf. Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).[15]

      1.      Accommodation:  Whether Plaintiff Used EDF's Accommodation Against the Company?

The next issue is whether the Plaintiffs—by purportedly agreeing to work from home offices, and then suing their former employer for construction termination—is an "attempt to use EDF's accommodation against the Company." (ECF No. 19. at 21).The Defendant's argument on this issue is bare-boned, but relies upon a string of authorities that supposedly support its reasoning without explaining why or how these authorities apply. Courts are "not charged with making the parties' arguments for them." *Meyer v. Bd. of County Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007).

Here, though, the Court has reviewed the cases cited by Defendant. Some of these cases are not only inapposite; but detrimental to Defendant's Motion for Summary judgment since they raise issues of quasi-estoppel. Such claims require showings of misrepresentation and detrimental reliance, which are both fact-driven. *Lubbock Heart Hosp., LP v. Olympus Managed Healthcare, Inc.*, 2011 WL 5374751, *4 (2011); and *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (1994).  These factual

---

[14] (ECF No. 20 Exh. 7 ¶ 16, Exh. 8 ¶ 12, Exh. 2 at 237:13-16, and Exh. 1 at 224:3-8.)

[15] In any event, the evidence regarding the issue of cure is both conflicting and abundant. (For example, ECF No. 20 Exh. 7 ¶ 16, Exh. 8 ¶ 12, Exh. 2 at 237:13-16, and Exh. 1 at 224:3-8, amongst others.)  And no doubt the issue of whether the Defendant cured the constructive termination—when it closed the Denver Office (and offered no alternative, other than the Plaintiffs' own homes)—will be firmly impressed upon the jury,

showings—along with material facts as to whether Plaintiffs agreed to work from home—are clearly "trial worthy" and only further defeat Defendant's Motion for Summary Judgment. *Harper v. Mancos Sch. Dist.* RE–6, 837 F.Supp.2d 1211, 1223–24 (D.Colo.2011); *Celotex,* 477 U.S. at 322.[16]

    2.    Reasonableness of Plaintiffs Action to Not Accept Defendant's Offer to Cure

Defendant argues that Plaintiffs were required to be "reasonable in working with EDF on curing the constructive termination" issues raised in Plaintiffs' notices dated September 27, 2012. (ECF No 19 at 19.) Again, like the previous argument, this, too, is bareboned. The assertion that Plaintiffs were required to be "reasonable" is defective for several reasons: (1) Defendant ignores the express languages in clause 2 that requires "cure" be to the "[plaintiffs'] satisfaction" – not the Defendant's; (2) even if the Court was to impute some reasonableness standard upon the Plaintiffs, it is difficult to see how this would not raise material issues of fact that require jury determination; and (3) Defendant offers no authority for the proposition that the Court must look to some reasonableness standard to adjudge Plaintiff's conduct. More than what is offered by Defendant is required. *See generally*, *Phillips* 956 F.2d 953-54 (10th Cir.1992) ( "A litigant who fails to press a point by supporting it with pertinent authority. . . .forfeits the point.")

    3.    Whether Plaintiffs' Course of Conduct Precludes Constructive Termination?

Defendant argues that because Plaintiffs accepted payments from Defendant

---

[16] Plaintiffs assert that there are clear material facts as to whether the Plaintiffs agreed to work from home. This again raises genuine facts for the jury to decide. (ECF No. 20 at 11.)

14

after resigning based on their notice letter of September 27, 2012, Plaintiffs are estopped from claiming that they did not "voluntarily" resign from EDF. (ECF No. 19 at 22) Several of the cases cited with respect the 'accommodation' are also cited here. The arguments seem to overlap. But as with the result on the accommodation, the Defendant's argument based on estoppel here is similarly rejected. The simple reason being: estoppel raises issues that go to misrepresentation and detriment, which would requires showings of fact that the parties dispute. *Lubbock Heart Hosp., LP v. Olympus Managed Healthcare, Inc.*, 2011 WL 5374751, *4 (2011) (Quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.") *See also, Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (1994).

Here, whether Plaintiffs in fact acquiesced or accepted the benefit under the pretense that it was for voluntary resignation is clearly in dispute. The Court views such facts in the light most favorable to the non-moving party. This case is illustrative of that very proposition, which provides further grounds to deny Motion for Summary Judgment.

Further, bound within this argument, Defendant attempts to blur the relevant clauses of the Contracts that led to some payments to Plaintiffs following their resignation. The argument is convoluted. Defendant asserts that Plaintiffs' notices of September 27, 2012 triggered voluntary resignation under the non-compete clause, not the constructive termination clause – and received payments from Defendant under the

former upon which Defendant relied. (ECF No. 19 at 21-22.) But this theory is misplaced. Purely for the purposes of this argument on summary judgment, and based on the Court's review of the relevant notices, the intent behind them was to place Defendant on notice of the relevant breach under clause 2(e) and provide 30 days for it to be cured. If it wasn't cured—which the Court has found to be a material dispute between the parties, warranting jury trial—then the Plaintiffs were entitled to their Base Salary for the Primary Term. (ECF No. 19 Exh. 1 at 2-3.) This Primary Term, as provided for in the Contracts, extended through to March 31, 2012. (*Id.* at 1)

Therefore, the notion that Plaintiffs received payments from Defendant ("and never protested nor rejected such payments") is irrelevant to the issue of cure (a disputed material fact). The reason being because those payments ended in December 2010 (which was well past the one-month cure period provided for in the Contracts). (ECF No. 19. at 22.) Subject to jury trial, there is enough evidence from which a reasonable trier of fact could find for the Plaintiffs on the issue of whether they should have been paid through December 2010 and into March 2011 pursuant to the alleged breach for constructive termination. (ECF No. 19. at 22.) As such, this issue is trial-worthy and one ripe for jury determination. *Harper* 837 F.Supp.2d at 1223–24; *Celotex*, 477 U.S. at 322.

Accordingly, the Court finds that factual disputes preclude resolution as a matter of law as to whether Defendant was allowed an opportunity to cure. Defendant's Motion for Summary Judgment is denied on this ground as well.

**C.     Whether asking Titus to relocate to Houston was a material breach of his agreement and not appropriate for summary judgment**

In addition to breach for constructive termination, Titus also claims that EDF materially breached his employment agreement because "[h]igh ranking EDF employees . . . applied constant and increasing pressure to relocate to Houston." (ECF No. 19 Exh. A4.) To counter this position, Defendant again seeks to rely on the misplaced construction that "principal place of employment" included Plaintiffs' personal homes; and therefore, any notion of "pressure" could not have occurred since Titus was working at an EDF office in Denver (albeit his own personal home). The Court has previously rejected this construction, and rejects Defendant's argument on Titus's material breach claim as well.

It follows that Defendant's argument on EDF pressure (or lack thereof) is turned on its head; ever more so by the facts that are raised in Plaintiffs' Statement of Facts.[17] Since these facts give rise to inferences that pressure was exerted—and "reasonable inferences" must be found in the light most favorable to the nonmoving party—it becomes apparent that there is a genuine issue of material fact; and an issue that further cuts against Defendant's Motion of Summary Judgement *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 670.

---

[17] For example, Plaintiff's Statement of Facts provides specific examples and citations in the record as to when alleged pressure was exerted. Plaintiffs' brief states: "While working in Houston in May, Fabio Nehme told Titus that moving to Houston would be important for his career at EDF (ECF 20, Exh. 8, at ¶10, Exh. 2 at 290:25 – 291:16). In July, Titus heard his EDF superiors discuss the fact that Titus had no future at EDF unless he was in Houston (Ex. 8, ¶10) In September 2010, in London, John Rittenhouse (EDF's CEO) asked Titus in front of a number of EDF executives when he was moving to Houston. (Ex. 2 47:4-18, 291:7 – 293:9)." (ECF No. 20 at 15.)

**D.    Whether Plaintiffs Can Establish a Violation of the Colorado Wage Claim Act.**

Finally, Defendant argues that because Plaintiffs were paid pursuant to the voluntary resignation clause of the Contracts, and received non-compete payments through December 2012, Plaintiffs were not owed any other monies under the Colorado Wage Claim Act. *See also*, *Barnes v. Van Schaak Mortgage.*, 787 P.2d 207, 209 (Colo. App. 1990) (stating that compensation is earned "if it is vested pursuant to an employment agreement at the time of the employee's termination.").

However, as the Court has found that there is are genuine issue as to the material fact of whether Defendants cured during the relevant period, then this issue also must be addressed before a jury. The reasoning in Section B.3. of this Order would also have equal application here. Because the issues raised in Section B.3. (and here) are trial worthy, Defendant's motion for summary judgment is denied. *Harper* 837 F.Supp.2d 1211 at 1223–24; *Celotex*, 477 U.S. at 322.

## IV.  CONCLUSION

Based on the foregoing, the Court hereby ORDERS that Defendant's Motion for Summary Judgment (ECF No. 19) is hereby DENIED in its entirety.

Dated this 20th day of November, 2012.

BY THE COURT:

William J. Martínez
United States District Judge